HOSPITAL HOSPITAL ...Mr. Olson's death. Instead they recruited a CI named Christopher Hirschauer and Mr. Hirschauer allegedly purchased small quantities of heroin on several occasions from Mr. Oliver. Once Mr. Oliver was charged with drug distribution offenses that allegedly occurred within 1,000 feet of parks or parks. At sentencing, as I said, the district court felt constrained to impose a very lengthy sentence upon Mr. Oliver and the particular issue at sentencing was the district court's finding that he had previous convictions for serious drug felonies. The district court imposed a 25 year minimum sentence. Of course subject to the court's questions and interests, I intend to start in reverse chronological order today by addressing a sentencing issue first and then working my way back to some of the trial errors we've alleged. The district court ended up imposing that 25 year minimum sentence because it found that the government proved beyond a reasonable doubt that Mr. Oliver had two prior convictions for serious drug felonies. The convictions at issue were out of Cook County, Illinois. The government before trial had filed notice of its intent to seek enhanced penalties based on those prior convictions. Mr. Oliver denied that he had prior convictions that would qualify him for enhanced penalties and thus the issue at sentencing became whether the government could prove beyond a reasonable doubt to section 851c1 of title 21 that Mr. Oliver had those convictions. The primary documents that were at issue at sentencing appear in the addendum to my first brief at pages 2 through 7. These were sentencing exhibits 1 and 2 from the government. There was a third conviction at sentencing as well that's reflected in exhibit 3, but the government acknowledged that did not qualify as a serious drug felony. Now at sentencing, the government did prove that Mr. Oliver had been convicted of something reflected by exhibits 1 and 2. The specific issue that we're raising is that the government failed to prove beyond a reasonable doubt the precise nature of those prior convictions and in particular the government failed to prove beyond a reasonable doubt that they were serious drug felony convictions. As to government... To understand this argument, you have to study exhibits 1 and 2. Can you hear me Mr. Hanson? I think we're having a little bit of a connectivity issue with with your mic and video, but can you hear me okay now? Mr. Hanson, can you hear? I can hear you now, Judge. Okay, and do let us know if you can't because we're having a bit of trouble with your video and audio and I want to make sure you have your full opportunity to present your argument. Is there anything in the record regarding exhibit 2 as to what the specific controlled substance was that was the subject of the conviction? There is not, Your Honor. The documents that the government offered at sentencing and that were attached to the 851 notices that it filed did not specify the particular subsection of Illinois statute 570 slash 401 that was at issue in that case. The pre-sentence report at paragraph 39 also did not identify the particular subsection of that statute or relatedly the controlled substance that was at issue there. So because of that, I think there's a particular issue with the conviction reflected in exhibit 2 that even if you accept all the assumptions that the district court made with respect to both of the exhibits, we don't know what subsection that Mr. Oliver was convicted of and we don't know what controlled substance that at issue with that second conviction. Mr. Hanson, if I could interrupt you, I don't know. We're having some trouble with your your voice in video again and I'd ask the clerk if we should try a reconnection because we're having a little difficulty with the back-and-forth question and Mr. Hanson? Should we have? Mr. Hanson? Oh, go right ahead. Yes. I'm sorry, Judge. Please. No, go ahead. Would you disconnect from the call and try to reconnect, please? I'll do that. Thank you. Thank you. Mr. Hanson, can you hear us now? I can, yes. That is a much clearer video image and it sounds like the audio is much better as well. Judge Kelly, can you hear and see Mr. Hanson? Yes, I can and it does from initial view it does look better. So thank you both. And I don't know where we were, Mr. Hanson, but you may proceed from wherever you thought you were before you re-signed up. I'll do my best and reiterate an answer that I was I was giving to your question, Judge Kelly, because I think it's a good one. There's a particular problem with Exhibit 2 because there's no identification of the subsection of the statute at issue and no identification as to the controlled substance at issue in that case and because of the Seventh Circuit's recent decision in Ruth, that's cocaine, there is a real question whether that qualifies as a serious drug felony. Is there any other subsection within the that Illinois statute that would render this not a qualifying conviction or is it is your argument entirely based on the Ruth analysis? It's not entirely based on the Ruth analysis. There is a unreported Seventh Circuit decision at called Neville at 784 Federal Appendix 950 that explains that there is not complete overlap between the substances that are controlled in the state of Illinois versus those that appear in the schedules under federal law and that doesn't just include cocaine, it includes some fairly rare substances as well. I think the bigger issue is with Exhibit 2 and the fact that it could have been a cocaine conviction but it's more broad than that and that just shows why with respect, I should say, to both convictions more information would have been helpful for the district court in making a finding beyond a reasonable doubt. Let me ask you this. I know there's an opinion in the Seventh Circuit that also looks at this section and you might have been referring to this as the unpublished one. I couldn't remember whether it was unpublished or not but it says that the federal schedules don't list two very uncommon substances. I don't even know what they are. Salvinorin A and Salvia Divinorum. Is that the case you're talking about? Is that the unpublished opinion that you're discussing or is there yet a third opinion from the Seventh Circuit that says that it's categorically broader? There is a third opinion. This argument as far as I could tell originated with Neville. You may be referring to the more recent Seventh Circuit case that cited Neville for that proposition and at this juncture I don't remember what that was but it relied on the analysis from Neville for exactly what you're saying Judge Strauss. Okay so your argument then is in several respects not only with regard to cocaine but with several other less common substances without knowing what the conviction was based on from the face of the analysis, the shepherd or the face of the documents you've given us. Your argument would be it can't qualify as a serious drug felony because the statute itself is categorically broader. We can't do the modified categorical approach here to figure it out. That's exactly right Judge Strauss. This is a factual issue and what I mean by that is we don't have the ammunition that we need to do the categorical or modified categorical analysis because we don't know from these documents and the other evidence the government produced in sentencing what exactly Mr. Oliver was convicted of and that goes with respect to both Exhibit 1 and Exhibit 2 because those documents are so inconclusive and vague in our opinion. What is the main concern about Exhibit 1? It doesn't have the same problem with identification of the controlled substance and seems to link up to heroin, a certain amount of heroin and delivery near a protected location. What are you asserting is missing with regard to Exhibit 1 in particular? Yes Judge Kelley. So this applies both to Exhibit 1 and Exhibit 2. What's missing and what the government should have done at sentencing is offer interpretive evidence for those certified statements of conviction because as you say Judge Kelley on page 1 there's identification of what Mr. Oliver was charged with by indictment or information and then after that there are a series of docket entries that what we don't have is proof beyond a reasonable doubt that what Mr. Oliver was found guilty of in those cases in the in both cases necessarily syncs up to what appears on page 1 of those particular documents. Because it could have been a lesser that he could have pled to some lesser charge is that is that your thought? Yes that's exactly right and that's especially significant now since the First Step Act requires for title 21 section 841 b1a a serious drug felony as opposed to a felony drug offense it narrows the definition in some way so it's especially important to know for example that Mr. Oliver didn't plead to a lesser included possession offense for example which would not qualify as a serious drug felony conviction and the government was not without tools to help the court make the analysis that it needed to make a finding beyond a reasonable doubt. I cited the Ingram case in my reply brief and that's actually the second Ingram opinion from this court on a similar issue. The second Ingram opinion explains how after this court had remanded the first time on this question of whether the defendant had a prior felony drug conviction the government offered not just these certified statements from Cook County Illinois as well but also charging documents, sentencing orders, testimony from a deputized clerk of court from Cook County and with all that information the district was able to make this finding beyond reasonable doubt. Here is what the district court had at its disposal it had to make a number of assumptions as to both exhibits one and two to make that finding and because it's proof beyond a reasonable doubt it's our enough for the district court to make that finding. Is there anything in exhibit one that would indicate that it was a lesser included? I mean Cook County records are notoriously cryptic and difficult to decipher but is there anything that you're pointing us to that would suggest that it was a plea to something else that would sort of give a district court pause as to whether it was proof beyond a reasonable doubt? There's nothing in particular Judge Kelly in either exhibit one or exhibit two to suggest that it was a lesser included offense but also there's no suggestion that that document absolutely reflects everything that possibly happened in those Cook County cases. Moreover again I think it's significant I think I'd have a problem arguing that there may have been a lesser included conviction if we were dealing with a proof beyond a reasonable doubt so I don't think the burden is on Mr. Oliver to show something specific that might suggest that it was a lesser included offense that he was convicted of. Counsel I wanted to ask so if we get past the the the serious drug felony point there's an issue under the guidelines as well for career offender and my understanding is both parties from my memory of the briefs say well essentially this is moot and I think there's maybe a footnote and in your brief talking about this is that properly before us if we decide I'm just trying to figure out everything fits together we decide that there aren't enough serious drug felonies and reverse on that ground should we send it back down then on the other issue as part of the resentencing or do you think that's properly before us? At this point I don't think it's properly before the court if if the court were to remand the case on the question of whether there were serious drug felonies the district court would be obligated again to conduct a guideline calculation and at that time the district court could make the analysis given that it had a lot more discretion in deciding on the sentence so I don't think the court needs to make a ruling with respect to the career offender issue, Judge Strauss. If there are no further questions on the sentencing issues I do want to quickly address one at least one of the errors that we've raised with respect to the trial. As the court likely noticed I am arguing for a new trial based on the doctrine of cumulative error. In other words I would acknowledge that any one of the errors that we've alleged in the briefing may not be enough for a new substantially prejudiced Mr. Oliver's right to a fair trial and what I want to start with is the issue of these maps that were admitted into evidence. It was a really significant issue at trial whether Mr. Oliver committed controlled substance offenses within protected locations within 1,000 feet of a park or a school and so for that reason these maps that reported to show that he did were very important evidence to the government. There were different types of maps that were admitted into evidence but they all had some common features. They all designated points of interest for the jury to consider both the alleged scene of controlled transactions between Mr. Oliver and Christopher Hirschhauer, also the labeling of protected locations, assertions as to distance between various points that were relevant to the protected location allocation. These maps were offered by the government for the proof of the generally speaking the matter of certain was that Mr. Oliver committed crimes within 1,000 feet of protected locations. These assertions as to whether some scene of crime or protected location ultimately came from the government's case agent Sergeant Troy Hanson from the Sioux City Police Department. He told a couple of City of Sioux City employees who created the maps what was the point of significance for these maps so they could mark them on the maps and create these maps for the trial. Both parties seem to agree that the Lizarraga-Toronto case from the Ninth Circuit seems to be the most helpful in analyzing this issue, particularly analyzing whether these maps contained hearsay. I think contrasting the single map at issue in Lizarraga-Toronto with the multiple maps at issue in this case is very helpful and it shows why these maps are in fact hearsay. The map at issue in Lizarraga-Toronto was whether the defendant was arrested in the United States at the time that the immigration agents used the GPS device marked a location. We used an automated process to mark that location on a Google map. It was admitted at trial. The Ninth Circuit said that was not hearsay because there was not a human assertion reflected in that particular map. Counselor, I wanted to ask you why does this matter? And I understand that you might be technically correct that it's hearsay. I think that that's sort of a tough question. But I want to skip over and say why does it matter from a harmless error point of view? Which is to say that my understanding, and you can certainly correct me if I'm wrong, is that the map, those those tacks I guess on the map, the things that were drawn on the map, reflect the trial testimony. So that basically it's cumulative. It's just a Yes, Judge Strassen, that's correct. That of course does not make the maps non-hearsay. But I understand your question to go to the to the question of harmless error. There are two responses to that. One, again this was a really really important issue. If Mr. Oliver had not committed these crimes or alleged crimes within protected locations, he would have faced no or a very short mandatory minimum sentence as it was the court found that it was 25 years. As to the what the jury saw and what the jury may have perceived with respect to the maps, the maps are really compelling evidence. Of course they had that they had the testimony of Sergeant Hanson, but if you had the ability to look at something that essentially says well the defendant did this, did this within a protected location, that's very powerful evidence. And that's why we assert that it was If the court has no other questions for now, I would like to reserve the remainder of my time. You may. Thank you. Ms. Steenholt. May it please the court. My name is Mikayla Steenholt and I represent the government in this matter. The district court correctly determined the three issues before this court today. First, the district court did not abuse its discretion in denying defendants motion for a new trial based on cumulative error. Second, the district court correctly found the government provided adequate notice of his enhanced penalties pursuant to section 851. And third, the district court did not clearly err in finding the government established defendants two prior convictions of serious drug felonies. Now turning to the first issue, that being the district court did not err in or did not abuse its discretion in denying defendants motion for new trial based on cumulative error. I will address each of the four purported errors in turn, but even if you found all four errors, Judge Strauss aptly points out, it would still amount to harmless error, but here in light of the overwhelming evidence presented at trial. So the record shows that at trial there were four controlled buys that were audio recorded, there were testimony from co-operators, three people who purchased drugs from the defendants, two were co-conspirators, and one was the confidential informant, there was a law enforcement testimony to present evidence about the surveillance and the drug deals themselves, and there was also text messages that corroborates the drug deals. So accordingly, any error or combination of errors the court would find would be considered harmless error in light of the overwhelming evidence in this case. Turning to the first issue, the first purported error is that the district court improperly admitted the defendants statements about firearms in this case. Now the district court held in the motion in limiting order that firearms are routinely allowed in drug cases because they are tools of the drug trade, they are probative of an ongoing drug conspiracy, and they are often used to safeguard and facilitate drug distribution activities. I have a question about those findings, and I think our case law is clear that we have said that drugs are tools of the drug trade, but my question here is in this particular case, other than the conversation with the CI, was there any evidence of any firearms that this particular man had used in connection with or associated with the case? Yes, your honor, there were text messages associated with his distribution of drugs and then selling of firearms as well. But I guess, well maybe I should sharpen my question, my understanding was that it was the CI who started the conversation about the sale of firearms. Am I wrong about that? I don't recall specifically if he started the conversation or not, your honor. So you don't you don't remember one way or the other whether it was the agent who said go ahead and ask him about firearms? Oh, I do recall that, yes. In light of the investigation showing that a defendant was involved in trafficking firearms, I think the CI was directed to... What was that evidence that he had been involved in that the nature of that evidence or the strength of that evidence seems quite relevant as to whether it's, I'll use the word again, relevant to this particular drug conspiracy or distribution case. What was the nature of that prior evidence? Well, your honor, I guess it was in the basis of the investigation as a whole, but I think if my memory serves me correctly that there was a robbery incident regarding drugs and I think Mr. Oliver wasn't involved in that, maybe a victim of that or somewhere in their drug conspiracy circle that there would have been a robbery that occurred and that's what prompted the conversation kind of about this firearm situation is about safeguarding and protecting drug deals in that context. Now, I don't believe that it may come out at trial in that regard, but regardless, your honor, the defendant discussed selling firearms to the CI during the drug deal and as I stated, the text messages corroborated the drug and gun talk and Sergeant Hanson testified at trial that firearms are tools of the drug trade and so for all these reasons, the court's evidentiary ruling on this issue should be affirmed. Now, turning second to the second purported error, as my colleague discussed, these maps. This is the second evidentiary ruling in question here. Now, first, we contend that it's not hearsay. Sergeant Hanson provided uncontested in court testimony about the locations of the drug deals. He actually walked the locations. He was present in a surveillance capacity for the drug deals. He walked with a wheel the distances between the protected locations and where the drug deals took place. That would support the foundation for his knowledge to testify about it, but what about the information on the maps itself? That's a separate document and I'm not sure that his testimony can turn a document non-hearsay. Can it? Well, your honor, on that point, as Sioux City engineer Nick Voss and crime analyst Marie Divis testified at trial, they simply inputted their addresses and the GPS coordinates into their GIS, geographic information software program, and it was the computer. The computer is the one that actually generated the dots on the maps, but your honor, as Judge Strauss pointed out, this is hearsay. The tax on the maps are hearsay. It would be harmless error and that's for the fact that for the overwhelming evidence in this case, that being that one of the drug deals took place at a park. That's found in trial exhibit 3K. I think the total measurement there was 12 feet. The picture there, I think, shows the park in the background. So all the government needed to prove here was that Mr. Oliver distributed drugs within a thousand feet of one protected location and the enhancements then apply. And simply, we did that, your honor. And so for that reason, the court should affirm the court's evidentiary ruling on that case or on that issue. Now, the third purported error is the government's good faith questioning of a witness. The defense is arguing that that was improper. Now, the district court properly found that there was a basis in fact for the government to ask the questions it did to Mr. Glenn. That being Ms. Dejeneff, another cooperator's previous testimony, that he couldn't believe the bag that he gave Olson killed him. Dejeneff and Mr. Glenn were in the same place at the same time and that provided the government a basis in fact to ask that question. Additionally, if the court has read Mr. Glenn's trial, as argued at trial and in the district court, the government has a basis to ask these questions because Mr. Glenn made the statement to law enforcement improper. So the defendant admitted to Glenn that he had confessed. That was law enforcement. Now, the defendant, the government tried to ask this question to the defendant or to Mr. Glenn at trial. There was a leading objection by the objection by rephrasing broadly. Mr. Glenn didn't answer the question. The government didn't push it. Then the defense will ask the question on cross. At that point, Mr. Glenn denies the statement was made and confronts Mr. Glenn on redirect about his prior inconsistent statement. At first, the government's trying to the defendant raises a hearsay objection. Government rephrases. And when asking Mr. Glenn this question, he again denies it, which is an inconsistent statement. At that point, the government is trying to impeach their witness. There is a conversation outside the presence of the jury to discuss this. Mr. Glenn is illiterate. So it became a logistical dance, I guess, of how to impeach Mr. Glenn on this issue. Ultimately, the government decided not to do so. But there was no basis. And the government remedied any objection not being leading and hearsay for this issue. So the district court should affirm this court should affirm the district court's ruling on this issue. The last issue is the jury's inadvertent receipt of an unamended exhibit. That was not prejudicial to the defendants. This again goes to that issue of the maps. So prior to trial starting, in the heading of the all those headings, the government replaced those exhibits. Somehow it made it into one of those maps, made it into the electronic version of the exhibits that the jurors had access to. So the big issue here is whether the word prime really is prejudicial to the defendant in this, the jury's receipt of this unamended exhibit. We would argue that it's not. The weight of the government's evidence is relevant in determining this issue, and the district court properly relied on Finnegan, the 8th Circuit case from 1953. It analogized the facts of that case to the facts of this case, that being that both parties have reviewed and signed off on the exhibits before they went back to the jurors. Second, the overwhelming evidence here that the government had against the defendant, as I stated already, those four audio and photograph recorded controlled buys with the defendant, among other things. And the evidence the jury examined, there's no indication that the alternate version of the government's exhibit was viewed during that time period. And I will say, too, that the jurors did receive the correct exhibit. So for these reasons, Your Honor, we request that court affirm the district court's order denying defendant's motion for a new trial. Turning to the second issue, the government's 851 notice provided adequate notice of defendant's enhanced penalties. I would like to jump directly to the Cook County documents, if we could, and in particular, exhibit two, as to whether that is sufficient to meet the burden of proving what, in fact, Mr. Oliver was convicted of and whether it's a qualifying offense. What about this document do you think is sufficient? Point to me where on the document you feel confident that's it and that's why it qualifies. Well, Your Honor, it cut out a little bit in the beginning of your question. I think you're asking me to now address the third issue instead of the second issue. Is that correct? Well, I'd like to hear your views on the government's exhibits in support of the prior convictions. Well, moving to that issue, the district court did not clearly err in finding defendant's two prior convictions qualified as serious drug felonies. So the district court went through this analysis at fingerprint cards, identifying information about Mr. Oliver to his convictions, expert testimony about the fingerprints, the PSR, and the judge stated, as you point out, Your Honor, that he wishes that the certified copies had been a bit more clear, but are still, in fact, certified copies. So they say they're certified copies. They're signed by the, I believe, by the clerk of court. Maybe I don't hear the defendant's argument to be they're not certified, they're not legitimate documents, or it wasn't me. I understand the argument to be we don't know what the conviction was, so we don't know whether it qualifies. Can you speak to that? Yes, Your Honor, and I think if you look cumulatively both at the PSR and the documents from the Cook County court, we know that it's under the Illinois statute 720 section 570-401, and we know that defendant, that in paragraph 39 of the PSR, it listed as a class X felony. We know through government exhibits 7 through 10 that a class X felony is 6 to 30 years imprisonment, and that we know that DEA agent Hunt testified at the court for a year in all three of the convictions, and they were all tested. So why is any of that relevant? Why is any of that relevant? Why do we look at the PSR? Why do we care what anyone said? When we're talking about Shepard documents, I think the only thing we care about is the certified conviction and or a complaint from the state court or something else, but we don't really care about what the PSR says. Well, Your Honor, United States v. Villasquez, it's the 8th circuit 2005 case, says that certified copies of convictions on their own are sufficient to establish prior convictions here in the 851 context, and that is what we have here from Cook County court, is that their certified statements of convictions last. Well, let me follow up. So we have two cases from the 7th circuit. We don't have a circuit case law on this Cook, on this Illinois statute, but we have one that says cocaine. Cocaine doesn't qualify because of the isomers with Ruth case. And then we have a case called Najera Rodriguez, which I finally found the case name that I was asking opposing counsel about, that talks about, and these are all covered by this provision that's in Exhibit 2, that says salvinorin A and salvia divinorum are not included within the federal controlled substances statute. And so isn't it, based on what we know, we don't have any indication this is heroin or anything else, isn't it categorically broader than the federal statute? Your Honor, I apologize, I cut out for about five seconds there, but I think I understand the crux of your question. Our position on defense counsel's 28-J letter that raises this issue is that it raises it for the first time. We view that this issue with Ruth and cocaine, the 7th circuit, which is not binding as the court knows, that these issues are waived. It is not before the court right now. But I understand those to be new cases, and that's why they're raised in a Rule 28-J. I think at least one of them was after briefing, so there wouldn't have been notice necessarily of those cases. It's my understanding, Your Honor, that the issue of geometric optical and positional isomers is an issue that had been percolating around the circuits, including the 8th circuit, I think, since around that 2018 time period. So although the circuit court in the 7th circuit had, I guess, recently ruled on this issue in Ruth, it wasn't raised by the defendant in any of the district court proceedings, even though it was an issue that was percolating during that time period. So for that reason— I was just going to say, there's another case, and it might have cut out, Najera Rodriguez versus Barr, 926 F. 3rd 343, that talks about Salborin A and Salvia Divinorum, which are not in the brief, but it arises under the same statute that's cited in this certified copy. What do we do with that? Same thing? It's waived? Same thing, Your Honor. I guess I could provide more information to the court in a supplemental briefing if the court would prefer, but on this issue, these Johnson delineated derivative issues, we believe that they're waived. And what if they're not? What's your position? Let's say it's not waived. What do you think the role of the Ruth analysis is on this particular issue? Well, I would submit that, as the court knows, and I've stated that Ruth is not binding on this court. It's a 7th circuit case. And, Your Honor, I would have to do a little bit more briefing on the issue to answer that more thoroughly. I guess I would assert that the district court, we stick with our briefs, that the district court properly found, did not clearly err on, that's the standard of review here, is clear error. The district court not clearly error in finding these convictions beyond reasonable doubt. So that would be our position, but I'm not sure that the court has any further questions on this particular issue. Well, if the court has no further questions, I could address the 851 notice issue. That was a big issue. That was briefed by the parties. We do think that the notice was adequate here, and this court should support the, affirm the district court's order on this. Notice was sufficient. First, the plain language of the statute does not require specific reference to the statute, enabling punishment in the 851 notice. Second, the face of the indictment is sufficient. And if it listed the prior convictions for which the government intended to rely on, and it expressly cited to 851, which it did, and also United States v. Ford, an 8th circuit unpublished case from 2016, that's directly on point. And for the rest of my arguments, I will leave it to the briefs. If there are no further questions, then I will just ask the court affirm the district court's rulings on all grounds. Thank you. Thank you. Mr. Hanson, I think you have a bit of rebuttal. Yes, your honor. Thank you. I'll go back to the sentencing issue and whether Mr. Oliver had convictions for serious drug felonies. When the government argues that Mr. Oliver waived this issue below, I think the government misunderstands the nature of the challenge. This is not primarily a legal challenge. This is a factual challenge. In order to do the analysis that we need to do to decide whether Mr. Oliver was convicted of a serious drug felony, we need to know, for example, with Exhibit 2, what subsection of that statute is at issue. Certainly, it could not have been the case that he was convicted of every subsection under 570-401. There are numerous substances and different forms of conduct listed under that statute. The government loses at the factual stage by not giving the district court enough information to do that analysis. Thus, of course, the issue is not waived because Mr. Oliver made it very clear that he was denying the fact that he had the prior convictions. I do want to harken back to something that Judge Strauss said. It is correct that the pre-sentence report is irrelevant to this determination. We look at the Shepard documents. We look at whether the government has proven the convictions beyond a reasonable doubt in sentencing. Even if it were relevant, Mr. Oliver lodged appropriate objections to the pre-sentence report and to those prior convictions as well. For those reasons, we would ask the court to remand for a new trial. If not, reverse remand Mr. Oliver's sentence. Thank you. Thank you. Thank you to both counsel. We appreciate the arguments and we appreciate your willingness to appear by video. We will take the matter under advisement.